THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES R. MITCHELL, Defendant-Appellant.
First District (3rd Division)   No. 1—88—2035

Opinion filed June 12, 1991.

Joseph C. Polito, of Joliet, for appellant.

John O'Malley, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Edward Pacer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant James R. Mitchell was found guilty of two counts of aggravated criminal sexual assault and sentenced to serve two concurrent 10-year terms in the Illinois Department of Corrections. On appeal, defendant argues that (1) the trial court erred in ruling that R.J.M. was competent to testify; (2) the trial court erred in allowing several State witnesses to testify as to the specific details of the victims' statements; and (3) the State failed to prove him guilty beyond a reasonable doubt. We affirm in part and reverse in part.

Prior to trial, the court held a competency hearing for R.J.M. J.S.M., who was three years old at the time of the alleged assault and four at the time of trial, as well as J.R.M., who was 16 months old on the date of the incident and two at the time of trial, were not tendered by the State as competent to testify in this matter. During the competency hearing, R.J.M. testified that he was five years of age and lived in a brown house on Chicago Road with Keith, his mom and younger brother, two-year-old J.R.M. R.J.M. also testified that he had a sister named J.S.M. When the judge asked R.J.M., "Do you promise *** to tell the truth, and nothing but the truth, so help you God?" he responded, "Yeah, I do."

When asked what it means to tell the truth, R.J.M. indicated that it meant not to tell a lie. R.J.M. testified that the assistant State's Attorney was wearing a brown jacket and that it would be a lie to call it red. R.J.M. further demonstrated his understanding of the difference between the truth and a lie when asked about the color of a book. R.J.M. testified that the fact that the book was green was a truth and it would be a lie to say that it was red, yellow or pink. R.J.M. further testified that although he had met with the assistant State's Attorney on numerous occasions, he was never told by the prosecutor or his mother to say certain things. R.J.M. testified that both his mother and the assistant State's Attorney told him to tell the judge the truth. R.J.M. counted to 19 and recited his alphabet through the letter p. R.J.M. also demonstrated his understanding of shapes by drawing a square, triangle, rectangle and a circle. The prosecutor questioned R.J.M. regarding the events of the day of the alleged assault and R.J.M. demonstrated that he recalled the events leading up to the as-

sault. At the conclusion of the hearing, the trial court found R.J.M. competent to testify.

At trial, the State presented five witnesses: R.J.M., his mother, Alice Mitchell, Officer Roe, Dr. Dekker and Detective Smits. R.J.M. testified in chambers that approximately 1½ half years prior to trial, his grandfather, whom he identified in court, took him, his brother, sister and grandmother in a van to visit his grandparents' home. He testified that when they arrived at the house, his grandparents served them Oreo cookies while they watched television in the living room. R.J.M. testified that his grandmother took J.S.M. to the bathroom to give her a bath while he and J.R.M. remained in the living room watching television.

R.J.M. testified that he did not see defendant do anything to J.S.M. or J.R.M. on that day. When R.J.M. was initially asked whether defendant did anything to him on that day, he responded "no." He further testified that he did not know what the term "dick" meant and that he had never used that term before. However, when the prosecutor showed him an anatomically correct male doll, R.J.M. identified the doll's penis as a "pee pee." R.J.M. testified that he did not see defendant's "pee pee" on that date. When asked by the prosecutor if defendant put his "pee pee" in his "butt," R.J.M. answered, "yes." R.J.M. testified that his grandfather stuck his "pee pee" in his "butt" before he went to "go potty." He further testified that J.R.M. was in the living room with him when it happened while J.S.M. and his grandmother were in the bathroom. R.J.M. identified the penis and buttocks on the anatomically correct male doll. He also demonstrated through the use of two dolls an act of anal copulation which he testified was a simulation of what his grandfather did to him on the day of his visit. He testified that although it hurt, he did not scream. R.J.M. further testified that after the act, they had Oreo cookies again and defendant left the house and went to the gas station.

R.J.M. further testified that soon thereafter, his grandfather took them back home in the van. He stated that when they reached home, they banged on the front door because they were hungry. R.J.M. testified that when he got in the house, he did not immediately tell his mother what happened, but he did tell her that he hated his grandfather. When asked why he said that, R.J.M. responded, "because he stuck his pee pee in us." R.J.M. did not recall telling any police officers what his grandfather did to him. He testified that police officers wore uniforms and carried guns and that he did not recall talking to anyone dressed like that.

Officer John Roe of the Dolton police department also testified at trial. Officer Roe stated that on December 15, 1986, he responded to a call from the home of Alice Mitchell. Roe talked with Ms. Mitchell and her children R.J.M. and J.S.M. Roe stated that J.S.M. was unresponsive to his questions, but that R.J.M. told him that his grandfather put his "dick" in J.S.M.'s "pee pee" while she was undressed. When Roe asked J.S.M. if anything had been inserted into her, she began to cry. Both children told Officer Roe that their grandparents took pictures of them. R.J.M. denied that his grandfather had assaulted him. When Roe determined that the alleged event occurred in South Holland, he advised his department's detective division, which in turn notified the South Holland police department.

Detective Elwood Smits of the South Holland police department testified that on December 15, 1986, pursuant to a telephone call from the Dolton police department, he contacted Alice Mitchell. Smits arranged to meet with Ms. Mitchell that day. Alice Mitchell came to the police department and related to him that her daughter, J.S.M., had been sexually assaulted by her grandfather. Detective Smits asked Alice Mitchell to bring her children into the station for questioning. Ms. Mitchell returned with R.J.M. and J.S.M. approximately one hour later. Detective Smits testified that he was unable to obtain statements from either of the children, so he contacted the Illinois State Police for assistance. Smits was advised by the State Police to contact Mount Sinai Hospital for assistance in interviewing the children. As a result, R.J.M., J.S.M., and J.R.M. were admitted to Mount Sinai Hospital's pediatric ecology unit on December 22. Smits further testified that on December 29, he met with Alice Mitchell, R.J.M., J.S.M. and an assistant State's Attorney. Smits testified without objection that through the use of anatomically correct dolls held by the assistant State's Attorney, R.J.M. and J.S.M. both stated that their grandfather put his penis in their anuses.

Detective Smits also interviewed defendant and his wife, Mona Mitchell, at the police station. Both defendant and his wife gave Smits a full statement of their account of the events of the day of the alleged sexual assaults. In addition, defendant gave Smits two undeveloped rolls of film which were taken on the day of his grandchildren's visit to his home.

Dr. Anthony Dekker, a staff physician at Mount Sinai and Chicago Osteopathic Hospitals, testified as an expert in the field of pediatrics and child sexual abuse. Dr. Dekker testified that he served as attending physician in charge of a medical team consisting of a physician, psychologist, child-life specialist, social worker, nurse, and child-care

worker on Mount Sinai Hospital's pediatric ecology unit. Dr. Dekker further testified that R.J.M., J.S.M., and J.R.M. were admitted to his unit on December 22, 1986, for a five-day assessment. During their hospital stay they underwent a preliminary nursing evaluation, a comprehensive medical assessment, testing for sexually transmitted diseases, a developmental assessment, social service assessment and a sex abuse interview.

The children were evaluated by a team of six health care professionals. Dr. Dekker personally conducted the physical examinations of R.J.M. and J.R.M., while Dr. Sharon Ahart performed the physical examination of J.S.M. Dr. Dekker testified that his rectal examination of R.J.M. revealed that he had a loose sphincter muscle. Dr. Dekker explained that the sphincter muscle was like a valve that prevents the stool from spilling out of the rectum. He further testified that in his opinion the loose tone was caused by the insertion of a rigid object into the rectum. Dr. Dekker testified that the sphincter muscle should be snug in the relaxed state. The doctor testified without objection that R.J.M. told him that his grandpa put his "dick" in his "butt." Dr. Dekker expressed the opinion that, on the basis of his total social, psychological and physical assessment, R.J.M. had been anally sexually abused.

Dr. Dekker performed a portion of the physical examination of J.S.M., while Dr. Ahart performed the vaginal and rectal examination of J.S.M. Dr. Dekker testified without objection that J.S.M. told him that her grandfather inserted his penis in her rectal area. Dr. Dekker also testified that Dr. Ahart's examination of J.S.M. revealed a rectal opening of 0.5 centimeters, which was indicative of poor rectal tone. Dr. Dekker expressed the opinion that J.S.M. had experienced sexual trauma by rectal penetration with a rigid object.

Dr. Dekker also testified that he examined J.R.M. and that his digital examination revealed loose rectal tone. The doctor's diagnosis of J.R.M. revealed that he had experienced sexual trauma to the rectum consistent with sexual abuse.

Dr. Dekker also examined the children for neglect in June 1987 when their mother was admitted to the psychiatric unit of Chicago Osteopathic Hospital. Dr. Dekker testified that his examination did not reveal any evidence of physical or sexual abuse and that he did not perform a rectal examination at that time.

The children's mother, Alice Mitchell, testified that she allowed her three children to visit their paternal grandparents' home on December 13, 1986. Defendant and his wife, Mona Mitchell, picked the children up from their home at approximately 12 noon. According to

Alice, when the children returned home at approximately 4 p.m., they were upset and crying. She testified that when asked, the children told her that they hated their grandparents. Later that evening, when she asked R.J.M. to demonstrate what had happened at the defendant's home, he stood behind J.S.M. and moved his hips in a backward and forward motion.

The children continued to show signs of disturbance such as disobedience and lack of appetite over the next two days. On December 15, the children finally told her why they were upset. On that date, in response to her mother's inquiry as to what was wrong, J.S.M. responded, "grandpa hurt my pee pee." Alice testified that she asked R.J.M. if J.S.M.'s statement was true and that he said yes. Thereafter, Ms. Mitchell called the Dolton police department. Approximately five minutes later, Officer Roe came to her home in response to the call. She told Officer Roe what the children had told her and he interviewed them. Officer Roe advised Ms. Mitchell to take the children to a hospital. As soon as the officer left, Alice took the children to the emergency room of Ingalls Memorial Hospital, where J.S.M. was examined by Dr. Adams.

That evening, Ms. Mitchell went to the South Holland police department, where she spoke to Detective Smits regarding her daughter's complaint of sexual abuse. Later, Ms. Mitchell brought R.J.M. and J.S.M. to the police department for an interview. Smits suggested that the children be admitted to Mount Sinai Hospital for an in-patient evaluation. Ms. Mitchell stayed with her children during their hospital admission. On December 29, 1986, Alice Mitchell was present when Smits and an assistant State's Attorney interviewed the children through the use of anatomically correct dolls.

Alice Mitchell testified that her daughter, J.S.M., told her that Jerry Caldwell, her former live-in boyfriend, also sexually assaulted her. Ms. Mitchell further testified that she told a Department of Children and Family Services caseworker about her daughter's complaint. Ms. Mitchell testified that on one occasion, while Detective Smits was at the door, Caldwell held the children in the laundry room and threatened to kill them. Alice stated that she told Smits about this episode, but that he merely entered her home to have her sign a release form and departed. She also admitted that she wanted Caldwell to move out of her home. Ms. Mitchell testified that Gary Kruc, her divorce attorney, offered her $21,000 on behalf of the defendant to drop the criminal case. Alice further testified that she had received in-patient psychiatric treatment on seven occasions between 1984 and 1987.

The defense presented nine witnesses: defendant, Dr. Adams, Dr. Cerniak, Joseph Branit, Ronald Stein, Patricia Patt, Michael Jones, Gary Kruc and Mona Mitchell. Defendant testified that on December 13, 1986, he and his wife picked up his three grandchildren from their mother's home and drove them to his home in South Holland. He further testified that when they arrived, the children began to play in the living room while he went to get gasoline for the car. Defendant testified that when he returned, he took pictures of the children. He also stated that the children had cookies and milk and that shortly thereafter, he took them home. He denied sexually assaulting any of the children.

Dr. Adams testified that he was a physician assigned to the emergency department of Ingalls Memorial Hospital. He testified that on December 15, 1986, he performed a vaginal examination of J.S.M. and in his opinion there was no evidence of sexual abuse. Dr. Adams did not perform a rectal examination on J.S.M. On cross-examination, Dr. Adams admitted that he was not a specialist in the area of child sexual abuse and that he had only diagnosed one case of child sexual abuse during his medical career.

Dr. Cerniak, a gastroenterologist, testified as an expert in the areas of rectal, colon, sphincter muscle and anal medical problems. Dr. Cerniak testified that poor rectal tone alone does not signify an abnormality. He further stated that, after reviewing Dr. Dekker's medical records, he was of the opinion that the records did not support the finding that a foreign object penetrated the rectums of R.J.M., J.S.M. or J.R.M.

Mona Mitchell testified that on December 13, 1986, she and defendant picked the children up from their home at about 12 p.m. and brought them to her South Holland residence for a visit. She stated that defendant ran errands while she played with the children. During their visit, she served the children cookies and milk. Mrs. Mitchell testified that she took J.S.M. to the bathroom on two occasions. She further testified that she did not see her husband abuse the children. They returned the children to their home at approximately 4 p.m.

Joseph Branit, Ronald Stein, Patricia Patt, and Michael Jones all testified to defendant's good reputation for truth and veracity in the community. Gary Kruc testified for the purposes of impeachment that, although he handled Alice Mitchell's divorce, contrary to her testimony, he never told her that someone had offered her $21,000 to drop the present case.

Following closing argument, the trial court found defendant guilty of the aggravated criminal sexual assault of R.J.M. and J.S.M. Defendant was found not guilty of the aggravated criminal sexual assault of J.R.M. The court noted in its finding that due to the numerous inconsistencies in Alice Mitchell's testimony, in weighing the evidence, it gave no weight to her testimony but rather, solely considered her role as the initiator of the investigation. This appeal followed.

Defendant first argues that the trial court erred in ruling that R.J.M. was competent to testify. We disagree.

■■ ■ The criteria for determining whether a child is competent to testify in court are whether the witness is sufficiently mature (1) to receive correct impressions by his senses; (2) to recollect these impressions; (3) to understand questions and narrate answers intelligently; and (4) to appreciate the moral duty to tell the truth. (*People v. Barfield* (1989), 187 Ill. App. 3d 257, 261, 543 N.E.2d 157, 158-59.) Further, it is not necessary for the child to give perfect answers to questions asked during the competency determination or at trial to be deemed a competent witness. (*Barfield*, 187 Ill. App. 3d at 261.) Once the court has determined that the minor is competent to testify, any confusion or contradiction in later testimony only goes to credibility as a witness, not competency to testify. *People v. McNichols* (1986), 139 Ill. App. 3d 947, 952, 487 N.E.2d 1252, 1257.

■ Defendant argues that R.J.M. made many illogical and unresponsive statements in response to simple questions and that therefore he was incompetent to testify. While R.J.M. did make some unresponsive remarks to questions posed, he also demonstrated the typical impatience of a five-year-old by asking when the questioning was going to be over, stating that he was hungry, asking when the restaurant would be open and asking at one point to be excused so that he could go to the bathroom. However, despite these digressions during questioning, R.J.M. demonstrated in a variety of ways that he knew the difference between the truth and a lie. R.J.M. testified that to tell the truth meant not to tell a lie. In addition, R.J.M. demonstrated the ability to receive correct impressions from his senses and recall these impressions when he described the color of a book and the prosecutor's coat jacket as well as when he counted the number of pencils in the prosecutor's pocket. In addition, R.J.M. recited his alphabet and drew various geometric shapes. In sum, R.J.M. adequately demonstrated that he was competent to testify. We therefore conclude that the trial court did not err in ruling that R.J.M. was competent to testify in this matter.

Defendant next argues that the trial court erred in allowing several State witnesses to testify as to the specific details of the victims' statements. Defendant argues that the admission of testimony about what the children told Dr. Dekker, Officer Roe and Detective Smits was reversible error since, prior to its revision, section 115—10 of the Code of Criminal Procedure of 1963 (Code) did not permit testimony concerning the details of a child's complaint of sexual abuse.

Prior to the 1988 revision, chapter 38, section 115—10, provided:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." Ill. Rev. Stat. 1985, ch. 38, par. 115—10.

■ This prior provision of the Code allowed hearsay testimony to be admitted when a child complained of a sexual act. The intent of the legislature in adopting this provision was to allow testimony which corroborated the fact that a child under 13 years of age made a complaint of sexual abuse to another person. The statute was interpreted to limit testimony to the fact that a complaint was made without allowing a detailed account of the complaint or the identity of the alleged assailant. (*People v. Server* (1986), 148 Ill. App. 3d 888, 900, 499 N.E.2d 1019, 1027.) However, while a specific recitation of the complaint was not admissible under this form of the statute, testimony must necessarily include some detail to effectively corroborate the fact that a complaint was made. *Server*, 148 Ill. App. 3d at 900.

■■ Moreover, the admission of unnecessary or impermissible detail, such as the identification of the defendant, will be deemed to be harmless when substantially corroborated by the testimony of the child victim or any other pertinent evidence and the child victim is present in court and available for cross-examination. (*Server*, 148 Ill. App. 3d at 900; *People v. Deal* (1989), 185 Ill. App. 3d 332, 339, 541 N.E.2d 695, 700.) The admission of testimony regarding the identity of the offender cannot be deemed prejudicial where identity is not at issue in the case. (*Server*, 148 Ill. App. 3d at 900.) However, the application of the harmless error rule has been limited to cases where a strong possibility of jury prejudice does not exist. (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 617, 515 N.E.2d 1359, 1366-67.) In addi-

tion, both a trial objection and a written post-trial motion raising the issue are required to secure review of alleged errors that could have been raised at trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30.

In the present case, after defendant was charged with commission of the offenses, but prior to trial, the legislature amended section 115—10 of the Code. The new amendment effective January 1, 1988, allows for the admission of corroborative complaint testimony which includes testimony regarding the specific details of any act "which is an element of an offense" charged. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.) In the present case, the court ruled that because the amendment of section 115—10 resulted in a substantive change in the law, it was inapplicable to the present case. However, the amendment to section 115—10 has been construed as procedural rather than substantive in nature and it has been held to apply to the prosecution of sexual assault cases where the alleged sexual offenses against a child occurred prior to the effective date of the amendment, but trial occurred after that date. See *People v. Hart* (1991), 214 Ill. App. 3d 512, 519; *People v. Priola* (1990), 203 Ill. App. 3d 401, 417, 561 N.E.2d 82, 94; *People v. Morton* (1989), 188 Ill. App. 3d 95, 102, 543 N.E.2d 1366, 1370.

Although the trial court incorrectly ruled that amended section 115—10 did not apply to the present case, the amended statute is relevant to the present case in that it furthers the prior judicial policy of finding admission of detailed corroborative complaint testimony harmless where there is other reliable evidence of guilt and the victim testifies and is subject to cross-examination.

Here, R.J.M. testified at trial and was subject to cross-examination. His testimony was corroborated by the testimony of Dr. Dekker which indicated that, in his opinion, R.J.M. had been anally sexually abused. The testimony of Detective Smits and Officer Roe which also corroborated R.J.M.'s complaint testimony was cumulative in nature. Further, the testimony of all three witnesses was admitted without objection and defense counsel cross-examined each of the witnesses. Defendant argues that because the court placed significant weight upon the corroborative testimony of Dr. Dekker, Detective Smits and Officer Roe, the admission of that evidence prejudiced defendant. We disagree.

■ Although the admission of detail regarding defendant's assault of R.J.M. was erroneous under the prior version of section 115—10 of the Code, defendant waived any error by failing to specifically object at trial or in his post-trial motion. (*Enoch*, 122 Ill. 2d at 186.)

Defendant concedes that this alleged error was not preserved for review. Moreover, any alleged error was harmless where the victim testified at trial, was subject to cross-examination and the victim's testimony was corroborated by medical evidence which confirmed sexual abuse. In addition, testimony regarding defendant's identity did not prejudice defendant where his identity was not at issue in this case. We therefore conclude that the defendant was not prejudiced by admission of the testimony of Dr. Dekker, Detective Smits or Officer Roe regarding the sexual assault of R.J.M. where there was other reliable information in evidence at trial.

Defendant was also found guilty of the aggravated criminal sexual assault of J.S.M. At trial, R.J.M. testified that he did not observe defendant do anything to J.S.M. In addition, J.S.M. did not testify at trial. The only evidence introduced in support of the charge of the aggravated criminal sexual assault of J.S.M. was the testimony of Dr. Dekker and Detective Smits. Dr. Dekker testified that J.S.M. told him that defendant had put his penis in her rectal area. In addition, Dr. Dekker testified that based on his colleague Dr. Ahart's rectal examination of J.S.M., as well as his interview with her, it was his opinion that J.S.M. had experienced sexual trauma by rectal penetration with a rigid object. Detective Smits testified that during an interview with J.S.M., R.J.M., an assistant State's Attorney and the children's mother, J.S.M. demonstrated through the use of anatomically correct dolls that defendant sexually assaulted her.

■ In this instance, the admission of the hearsay testimony of Dr. Dekker and Detective Smits was not harmless where the victim did not testify and was therefore unavailable for cross-examination. In addition, since no other witness testified that he observed defendant sexually assault J.S.M., the court had no evidence other than the hearsay testimony of Dr. Dekker and Detective Smits upon which to base its finding. Under these circumstances, we conclude that, under the prior provisions of the Code relating to corroborative complaint testimony in a child sexual abuse case, the trial court erred in finding defendant guilty of the aggravated criminal sexual assault of J.S.M. on the basis of hearsay testimony alone. While the testimony of Dr. Dekker and Detective Smits may have been properly admitted as substantive evidence of defendant's guilt under amended section 115–10, because the trial court found that section to be inapplicable, the appropriate safeguards to ensure reliability of the testimony were not used and therefore the testimony was improperly allowed. Defendant's conviction for the aggravated criminal sexual assault of J.S.M. is

therefore reversed. Compare Ill. Rev. Stat. 1985, ch. 38, par. 115—10, and Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

Finally, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Due to our reversal of defendant's conviction for the sexual assault of J.S.M., we will only address this issue as it applies to defendant's conviction for the aggravated criminal sexual assault of R.J.M.

■ Defendant argues that he was not proved guilty beyond a reasonable doubt because R.J.M.'s testimony was neither clear and convincing nor substantially corroborated. However, the standard to be used in reviewing the sufficiency of the evidence in all criminal cases is proof beyond a reasonable doubt, whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346.) In cases where a sex offense is charged, the State is no longer required to demonstrate that the victim's testimony is either clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt. (*People v. James* (1990), 200 Ill. App. 3d 380, 394, 558 N.E.2d 732, 742; *People v. Byrd* (1990), 206 Ill. App. 3d 996, 1006, 565 N.E.2d 176, 182.) Therefore, the appropriate standard of review when a challenge to the sufficiency of the evidence is presented is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

■ In the present case, R.J.M. testified that while he was visiting his grandparents' home, defendant put his penis into his "butt" while they were in the front room of the home with his brother J.R.M. He further testified that his grandmother and sister, J.S.M., were in the bathroom when this incident occurred. R.J.M. demonstrated the act through the use of anatomically correct dolls. When R.J.M. arrived at home he told his mother that he hated defendant. He later told Dr. Dekker and other members of the medical team at Mount Sinai Hospital that defendant had anally sexually assaulted him. In addition, Dr. Dekker's medical examination of R.J.M. revealed that he had been anally sexually abused. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of the aggravated criminal sexual assault of R.J.M. We therefore conclude that the court's finding is not so unsatisfactory, unreasonable or improbable as to raise a reasonable doubt of defendant's guilt.

Accordingly, the judgment of the court finding defendant guilty of the aggravated criminal sexual assault of R.J.M. is affirmed, and the

judgment of the court finding defendant guilty of the aggravated criminal sexual assault of J.S.M. is reversed and that sentence is vacated.

Affirmed in part and reversed in part.

CERDA, P.J., and GREIMAN,* J., concur.

---

*Justice Freeman participated in this appeal, but has since been elected to the Illinois Supreme Court. Justice Greiman was substituted as the third member of the panel and has read the briefs and listened to the oral argument tapes.