JERRY W. REDDICK, SR.,
Petitioner–Appellant,

v.

J. RONALD HAWS, Warden,
Respondent–Appellee.

No. 96–1808.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1996.

Decided July 22, 1997.

Roger K. Heidenreich, Teresa Dale Pupillo, Sonnenschein, Nath & Rosenthal, St. Louis, MO, Julie A. Bregande (argued), Lowenbaum, Bobroff, Hesse, Lindmark & Martone, St. Louis, MO, for Petitioner–Appellant.

Catherine Glenn (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

In 1986, an Illinois jury found Jerry W. Reddick, Sr., guilty of committing aggravated criminal sexual assault upon his eleven year-old daughter, whom we will refer to as P.R. The court ordered him to serve concurrent prison terms of twenty-five years for each of the two counts on which he was convicted. After exhausting his state court remedies, Reddick petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition. Reddick appeals, arguing (1) that his trial counsel was ineffective for a variety of reasons, (2) that the trial court violated his Sixth Amendment right to confront the witnesses against him when it barred his attorney from questioning P.R. about her purported sexual conduct with another individual, (3) that he was denied due process when the court excluded evidence that might have supplied an explanation other than sexual assault for certain physical symptoms a doctor noted upon examining P.R., and (4) that P.R. committed perjury when she testified that Reddick assaulted her, rendering his subsequent conviction a violation of due process. We find none of these contentions meritorious based on the record before us, and therefore affirm the district court's decision to deny Reddick's habeas petition.[1]

The state's case against Reddick rested on the testimony of four witnesses. P.R. herself testified that her father had put his finger and his penis into her vagina on multiple occasions. She had eventually disclosed this to her aunt, setting an investigation into motion. Dr. Anthony Scalzo testified that he had examined P.R. in the emergency room of a St. Louis hospital after Reddick's acts were reported to the authorities. He found that her introital opening was enlarged and that her hymenal ring was distorted or retracted on one side, reflecting an adhesion to the lateral wall. The hymenal ring was also sickled, or thinned at the edges. He believed these symptoms to be highly consistent with digital and slight penile penetration at least a few weeks but not more than five months prior to the examination. Steven Blair, an investigator for the Illinois Department of Children and Family Services, and Verna Horstman, a Belleville, Illinois police matron, were the state's other two witnesses. Blair and Horstman had both investigated the allegations that P.R. was sexually abused, and they along with Scalzo were permitted without objection to recount what P.R. had told them about Reddick's actions. Horstman noted that according to P.R., the assaults had taken place four to five times weekly from mid–February, 1986 until June of that year. Reddick testified in his own defense and denied that he had ever sexually abused P.R.

During the state's case, while P.R. was still on the stand, Reddick's counsel had sought the court's leave to cross-examine her about a purported admission to Reddick that she had had sexual contact with Jeff "Little Jimmy" Elkins. See Tr. 76–86. Although the court recognized that the Illinois rape shield statute bars testimony about the victim's history of sexual contact with anyone but the defendant (see 725 ILCS 5/115–7(a)), it agreed with the defense that evidence of P.R.'s sexual contact with someone other than Reddick might be admissible as an explanation for the physical abnormalities that Dr. Scalzo had described. Tr. 82–83; see also Tr. 109–10. The court did not permit Reddick's counsel to cross examine P.R. on this subject during the state's case, but it said that if Reddick were later able to establish with competent evidence in his own case that P.R. had engaged in sexual activity with Elkins, it would permit the defense to recall P.R. to the stand. Tr. 85–86. At the close of the state's case, before Reddick himself took the stand, Reddick's counsel made a proffer to the court indicating that P.R. had made a statement to Reddick acknowledging one instance of sexual contact with Elkins at some unspecified time within the five-month period prior to Scalzo's examination. Tr. 105–06.

---

1. Reddick's petition was filed before the "Antiterrorism and Effective Death Penalty Act of 1996" became law. The provisions of that act therefore do not govern our review of his claims. *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

The court was willing to let Reddick testify about this admission, but it wanted a foundation established for P.R.'s out-ofcourt statement to Reddick, including the time, place, and persons present. Tr. 106–07. The court also wanted the date of the underlying incident pinned down somewhat—Reddick at the least had to be able to testify that the incident occurred some "four or five months ago" and not just that it had occurred at some unspecified time within a five-month range. Tr. 107–09. Finally, consistent with the purpose for which this testimony was being offered, the court indicated that the sexual incident with Elkins had to have involved penetration or it would not be relevant. Tr. 110. No objection was voiced to the propriety of these requirements. Yet, without explanation, when Reddick took the stand, his counsel never elicited testimony from Reddick as to P.R.'s statements concerning Elkins.

The defense also sought to elicit testimony from Reddick that he had witnessed P.R. masturbating, suggesting that this too might explain the hymenal distortion Scalzo had observed. Tr. 107–08. The court barred this testimony, reasoning that proof of masturbation alone would not be relevant in terms of the physical symptoms Dr. Scalzo had noted. Tr. 108.

We note finally that more than six years after Reddick was convicted, P.R. recanted her trial testimony. In a written statement, she said that she had been scared, confused, and told what to say by law enforcement personnel.

■ We begin our analysis with the ineffectiveness claim. Reddick has argued that his trial counsel was ineffective in some six respects. We have considered the cited omissions individually and collectively, but we think it necessary to discuss only one of them. As we have noted, Scalzo, Blair, and Horstman all repeated on the stand what P.R. had told them about Reddick's assault upon her, and the defense lodged no objection. Reddick makes no Confrontation Clause argument about this testimony, but he does contend that a hearsay objection would have been availing under Illinois law. The absence of an objection is certainly sur-

prising, but we agree with the district court that Reddick cannot establish the prejudice that a claim of attorney ineffectiveness requires. See *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). P.R. herself testified to the acts in question, of course, and Dr. Scalzo's physical observations lend significant corroboration to the notion that she had been sexually assaulted. Illinois courts also recognize a "medical condition" exception to the hearsay rule that allows a physician to recount statements made to him or her concerning the cause of the condition for which treatment is sought. See *People v. Camel,* 59 Ill.2d 422, 322 N.E.2d 36, 45 (1974) (affirming admission of sixteen year-old's statement to doctor that she had been raped); *People v. Gant,* 58 Ill.2d 178, 317 N.E.2d 564, 569 (1974); *People v. Fuelner,* 104 Ill.App.3d 340, 60 Ill.Dec. 87, 96, 432 N.E.2d 986, 995 (1982). Reddick appears to concede that this exception opened the door to at least some of what P.R. told Scalzo, although he argues that it is not so broad as to have permitted Scalzo to repeat P.R.'s identification of Reddick as her assailant, for example. See *People v. Enoch,* 189 Ill.App.3d 535, 136 Ill.Dec. 905, 919–20, 545 N.E.2d 429, 443–44 (1989); *People v. Taylor,* 153 Ill.App.3d 710, 106 Ill.Dec. 614, 622, 506 N.E.2d 321, 329 (1987); see also *People v. Sexton,* 162 Ill.App.3d 607, 114 Ill.Dec. 88, 95, 515 N.E.2d 1359, 1366 (1987); but see *People v. Thompson,* 198 Ill.App.3d 417, 144 Ill.Dec. 603, 605–07, 555 N.E.2d 1122, 1124–26 (1990). But between P.R.'s testimony and so much of Scalzo's testimony as the medical condition exception allowed, it is clear that there was substantial proof of Reddick's guilt independent of whatever out-of-court statements Illinois hearsay rules would not have permitted. Thus, even if we assume that Blair and Horstman had been permitted to testify only that P.R. had made a complaint to them, without venturing

unnecessarily into the details,[2] we cannot say that it was reasonably probable the jury would have assessed Reddick's culpability differently. Accordingly, the failure of Reddick's counsel to object to this testimony does not amount to cognizable ineffectiveness, alone or in combination with the other errors Reddick has cited.

■ We proceed to Reddick's Sixth Amendment argument. Reddick insists that the district court was obligated by the Confrontation Clause to allow cross-examination concerning the instance of purported sexual contact between "Little Jimmy" Elkins and P.R. As we have noted, however, the court did open the door to examining P.R. on this subject; it merely required that Reddick first lay an appropriate foundation for the admission (in his own case) of P.R.'s remarks acknowledging the incident, and that Reddick be able to assign a rough date to the incident itself. When Reddick took the stand, however, he was asked nothing about P.R.'s alleged admission. Reddick includes that omission among the instances of ineffectiveness we have not discussed, but that claim of ineffectiveness fails for the same reason that Reddick's Sixth Amendment claim does. If the alleged contact between Elkins and P.R. could not be placed reliably within the five-month period prior to Scalzo's examination, then it would not serve as Reddick wished it to as an alternate explanation for Scalzo's observations. Inquiry thus would have run afoul of Illinois' rape shield statute. The fact that Reddick's counsel did not venture into this area with Reddick while he was on the witness stand suggests that Reddick could not comply even with the basic threshold requirements that the court imposed. Eliminating all doubt on that score is Reddick's brief on direct appeal to the Illinois appellate court, in which he concedes that he could not establish when either P.R.'s admission or the underlying conduct with Elkins purportedly occurred. Brief at 27, 30; see also Petition for Leave to Appeal to the Illinois Supreme Court at 22. There can be no argument that a constitutional violation occurred in this setting. Given that Reddick could neither lay a rudimentary foundation for the circumstances of P.R.'s purported admission, nor establish when the underlying conduct took place, despite the considerable leeway the trial court was willing to give him on this (recall that the court was willing to accept testimony that the act took place "four or five months ago," see Tr. 107, 108), we can only conclude that Reddick's evidence on this score was unreliable. We certainly cannot assume, in the absence of competent proof that any pertinent sexual conduct between P.R. and Elkins had ever occurred, that cross-examination of P.R. would be legitimately fruitful. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). The trial court's exercise of this discretion here was patently reasonable and worked no discernable prejudice upon Reddick.

■ On to the due process claim. As with the purported sexual conduct with Elkins, Reddick wished to establish that he had seen P.R. masturbating to supply another explanation for the enlarged introital opening and distorted hymen Dr. Scalzo had observed when he examined P.R. But Dr. Scalzo himself did not believe it likely that masturbation could have accounted for these abnormalities

**2.** We note that although, in prosecutions for physical or sexual offenses committed against children under the age of thirteen, Illinois law formerly permitted a witness to whom the child complained to recount only the fact and nature of the complaint, it now permits the witness to recount the details of any act that is an element of the offense, provided that the court first finds the testimony sufficiently reliable and that it also instructs the jury in how to assess the weight and credibility of this kind of evidence. See 725 ILCS 511. 5–10 (Smith–Hurd 1997 Supp.); *People v. Mitchell,* 215 Ill.App.3d 849, 159 Ill.Dec. 409, 415–16, 576 N.E.2d 78, 84–85 (1991) (discussing the change). Illinois courts continue to hold, however, that it is inappropriate for the witness to recount the victim's identification of the defendant as the person who assaulted her. *People v. Balle,* 234 Ill.App.3d 804, 176 Ill.Dec. 90, 99, 601 N.E.2d 788, 797 (1992); but see *Thompson, supra,* 144 Ill.Dec at 605–07, 555 N.E.2d at 1124–26.

(see Tr. 49–50), and we are given no reason to question his judgment in that respect. It is difficult to understand then, why the trial court's exercise of discretion in excluding Reddick's testimony on this point rose to the level of a constitutional violation. Again, Reddick has made no proffer that even demonstrates the relevance of the masturbation he assertedly observed (i.e., that it involved the kind of conduct that might account for the abnormalities Dr. Scalzo observed), let alone convinces us that the trial court was constitutionally compelled to admit the testimony. See *People v. Reddick*, 172 Ill.App.3d 1175, 136 Ill.Dec. 579, 544 N.E.2d 1354 (1988).

Reddick's final argument is premised upon P.R.'s recantation—that demonstrates, in his view, that P.R. perjured herself on the stand and that his conviction was obtained in derogation of due process. The state appellate court thought that Reddick had procedurally defaulted this claim for a variety of reasons, although it went on to conclude that the recantation did not amount to clear and convincing evidence that Reddick's conviction was based on false testimony. Here, the primary obstacle to the claim, as Reddick acknowledges, is that this circuit demands proof that the prosecution made knowing use of perjured testimony. E.g., *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1387 (7th Cir.1994) (en banc), cert. denied, 514 U.S. 1037, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995), citing *Burnett v. Illinois*, 619 F.2d 668, 674 (7th Cir.), cert. denied, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). Some circuits have not required that contemporaneous knowledge of the perjury be shown, reasoning that allowing the conviction to stand once the perjury becomes known is alone enough to establish a due process violation. E.g., *Sanders v. Sullivan*, 863 F.2d 218, 222–24 (2d Cir.1988). We have previously declined invitations to reconsider our position (e.g. *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1122 (7th Cir.1991), cert. denied, 504 U.S. 922, 112 S.Ct. 1973, 118 L.Ed.2d 573 (1992)), and we have not been given convincing reasons to do so in this case.

We find, in sum, no constitutional flaws in Reddick's conviction. We therefore AFFIRM the district court's judgment denying Reddick relief pursuant to 28 U.S.C. § 2254.