THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN DeWEESE, Defendant-Appellant.

First District (1st Division)    No. 1—96—4366

Opinion filed July 20, 1998.

6

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Megan E. Goldish, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, John DeWeese, was charged with three counts of aggravated criminal sexual assault against his almost five-year-old daughter, D. After a bench trial, the court found defendant guilty of aggravated criminal sexual abuse and sentenced him to six years in prison. Defendant appeals, contending (1) the trial court erred in convicting of him of aggravated criminal sexual abuse, which was not charged in the indictment nor was it a lesser included offense of aggravated criminal sexual assault; (2) the trial court abused its discretion in determining that D. was competent to testify; and (3) the mittimus must be corrected so that it accurately reflects the trial court's judgment. We affirm defendant's conviction and amend the mittimus to conform to the judgment entered by the trial court.

At trial, Julia Porreca testified she is the grandmother of D. On August 1, 1995, Porreca was at her daughter's house, watching television with D. Porreca noticed that D. was "lying on her stomach with her hands clenched in front of her, and she was moving her pelvis, *** motioning like up and down like in the sexual act."

Porreca asked D. what she was doing, and D. told her she was "doing exercise." Porreca asked her who told her about this exercise, and

D. responded "daddy." Porreca asked D. whether her daddy had said anything else to her, and D. stated "in and out." Porreca asked "in and out where?" and D. said "down there" and pointed to her private parts.

Porreca testified that D. then took her by the hand and led her into the bedroom, where D. picked up a bottle and said "This is the bottle that he used." Porreca asked D. how her daddy had used the bottle, and D. said "it burned and it hurt." Porreca asked D. whether she had told her mommy about this, and D. said "no." Porreca asked D. why she had not confided in her mommy, and D. responded that her daddy told her "he would throw her out the window and that he had a bullet for her."

Julie DeWeese testified she has two daughters, R., and D., and that defendant is her ex-husband and D.'s father. Julie testified that on August 1, 1995, she left her house at around 9 or 10 a.m. Julie's mom (Porreca) babysat while she was away. When Julie returned home in the afternoon, Porreca told her about D.'s allegations against defendant.

Julie testified she spoke with D. the next day, August 2, in the bathroom. Julie asked D. about the "exercises" and D. told her "these are the exercises I do with daddy." Julie asked "for what?" D. responded "for in and out," and then she placed a finger from her right hand in between two fingers on her left hand. Julie testified that she then asked D. whether her daddy touched her "anywhere he wasn't supposed to." D. said "yes," and stated that he touched her on the neck, chest, stomach, buttocks and "chiconnes." Julie testified that "chiconnes" was a family word meaning "vagina."

Julie asked D. what happened when her daddy touched her chest. D. refused to answer, and Julie assured her that she was safe and that nobody would hurt her. D. shook her head and said, "No, no. It's sick. It's sick." After about a minute, D. said, "He would take things and shove them up my hole and it would burn, mommy, and he told me to put my legs together."

Julie asked D. why she never told her about this before. D. responded that her daddy threatened to shoot her and throw her out the window if she talked to Julie.

Julie asked D. to describe the items he put in her vagina, and D. led her into the bedroom and pointed to cologne bottles. Julie asked D. to describe what daddy did with the cologne bottles, and D. said he would "shove them up her hole," that it burned, and that he would then "take a curtain and wipe it." D. told Julie that her daddy used the bottles on her when Julie was out of the house, usually when Julie picked R. up from school or visited a neighbor.

Julie took D. to Loyola Hospital on August 3, 1995, where Doctor Beltran examined her vagina and rectum. D. was upset throughout the examination, screaming that "it burned."

Julie testified that for about a year prior to her August 2 conversation with D., Julie had noticed that D.'s vaginal area was red and that she suffered from vaginal irritation. Julie did not mention this redness to Julie's doctor because she (Julie) attributed the irritation to factors such as D. having strong urine or failing to wipe herself properly after urination.

The parties stipulated that Doctor Fran Skulavich would testify that D. visited her eight times in 1995, and during those visits the doctor treated D. for a stomach ache, headache, cough, low grade fever, and pharyngitis. Doctor Skulavich never conducted a vaginal exam on D.

The State called D., who was six years of age at the time of trial and had earlier been found competent to testify. The State questioned D. about the cologne bottles. At first, D. stated she "forgot" what happened. However, D. later testified that her father had put the bottles up her "chiconnes." On cross-examination, D. agreed that her allegations against her father were "just a story." On redirect examination, D. testified she was telling the truth about what her daddy did with the bottles.

Defendant testified on his own behalf and denied sexually assaulting D. and denied placing cologne bottles in her vagina.

Following closing arguments, the trial court acquitted defendant of aggravated criminal sexual assault but convicted him of aggravated criminal sexual abuse. The court later sentenced defendant to six years in prison. Defendant filed this timely appeal.

First, defendant argues that the trial court erred in convicting him of a crime, aggravated criminal sexual abuse, which was not charged in the indictment.

■ A defendant cannot be convicted of an offense with which he has not been charged. *People v. Novak*, 163 Ill. 2d 93, 105 (1994). However, a defendant may be convicted of an offense not expressly included in the charging instrument if the offense is a lesser included offense of the crime charged. *Novak*, 163 Ill. 2d at 105.

The trial court determined that aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault. Defendant contends the trial court erred in that determination and cites in support *People v. Novak*. Novak was charged and convicted of aggravated criminal sexual assault. *Novak*, 163 Ill. 2d at 97. On appeal, he argued that the trial court erred by refusing his tendered jury instruction on the lesser included offense of aggravated criminal sexual

abuse. *Novak*, 163 Ill. 2d at 105. The supreme court held that in determining whether a particular offense is included in a charged offense, the proper approach is to examine the charging instrument. *Novak*, 163 Ill. 2d at 112-13. Under this charging instrument approach, an offense is identified as a lesser included offense if the charging instrument contains a "broad foundation" or "main outline" of the lesser offense. *Novak*, 163 Ill. 2d at 107.

Novak was indicted as follows:

"Chester M. Novak committed the offense of aggravated criminal sexual assault in that he was seventeen years of age or over and committed an act of sexual penetration upon [the victim], to wit: contact between Chester M. Novak's penis and [the victim's] mouth and [the victim] was under thirteen years when the act of sexual penetration was committed ***." *Novak*, 163 Ill. 2d at 114.

■ Our supreme court held that the indictment against Novak did not describe the foundation or main outline of aggravated criminal sexual abuse. *Novak*, 163 Ill. 2d at 114. A defendant commits aggravated criminal sexual abuse if he "was 17 years of age or over and (i) commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12—16(c)(1) (West 1996). Sexual conduct means, in relevant part, "any intentional or knowing touching or fondling by *** the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal." 720 ILCS 5/12—12(e) (West 1996).

The supreme court noted that the indictment did not describe any touching or fondling of the victim's body parts for the purpose of sexual gratification or arousal. *Novak*, 163 Ill. 2d at 114. Accordingly, the court held that the indictment did not describe aggravated criminal sexual abuse. *Novak*, 163 Ill. 2d at 115.

■ In the present case, the three counts of the indictment charging defendant with aggravated criminal sexual assault are as follows:

"He, committed an act of sexual penetration, upon [D.], to wit: contact between numerous cologne bottles, [defendant's] finger and [D.'s] vagina by the threat of force, and caused bodily harm to [D.] ***."

"He was seventeen years of age or over and committed an act of sexual penetration upon [D.], to wit: contact between numerous cologne bottles, [defendant's] finger and [D.'s] vagina and [D.] was under thirteen years of age when the act of sexual penetration was committed ***."

"He, committed an act of sexual penetration, upon [D.], to wit: contact between numerous cologne bottles, [defendant's] finger and [D.'s] vagina and he knew that [D.] was unable to understand the nature of the act, and caused bodily harm to [D.] ***."

Defendant argues that, as in *Novak*, the indictment does not describe the foundation or main outline of aggravated criminal sexual abuse, because it contains no language describing any touching or fondling of the victim for purposes of sexual gratification or arousal.

However, two recent supreme court cases, *People v. DiLorenzo*, 169 Ill. 2d 318 (1996), and *People v. Hamilton*, 179 Ill. 2d 319 (1997), cast doubt on whether such language is required.

In *DiLorenzo*, defendant was charged with aggravated criminal sexual abuse in that "he, who was 17 years of age or older, knowingly committed an act of sexual conduct with [the victim] who was under 13 years of age when the act was committed." *DiLorenzo*, 169 Ill. 2d at 322. The trial court found him guilty and sentenced him to 14 years in prison. *DiLorenzo*, 169 Ill. 2d at 320.

On appeal, DiLorenzo argued that the indictment was fatally defective because it did not include a material element of the offense, specifically, that the sexual conduct was for the purpose of sexual gratification. *DiLorenzo*, 169 Ill. 2d at 322. The supreme court rejected his argument, noting that the indictment apprised DiLorenzo of the precise offense charged with enough specificity to prepare his defense. *DiLorenzo*, 169 Ill. 2d at 323-25.

In *People v. Hamilton*, defendant was convicted of residential burglary and sentenced to 18 years in prison. *Hamilton*, 179 Ill. 2d at 320-21. On appeal, he argued that the trial court erred by refusing his tendered instructions on the lesser included offense of theft. *Hamilton*, 179 Ill. 2d at 322-23. The majority of the appellate court analyzed the charging instrument and determined that it did not set out the broad foundation of theft because it did not mention all the statutory elements of theft. *Hamilton*, 179 Ill. 2d at 325. Our supreme court, though, held that "to warrant instructions on a lesser offense under the charging instrument approach, it is not necessary for the charging instrument to expressly allege all the elements of the lesser offense. [Citation.] This court has readily found necessary statutory elements to be 'implicitly' contained in a charging instrument." *Hamilton*, 179 Ill. 2d at 325. The supreme court determined that the charging instrument sufficiently identified theft as a lesser included offense of residential burglary. *Hamilton*, 179 Ill. 2d at 325.

Under the analysis employed in *DiLorenzo* and *Hamilton*, aggravated criminal sexual abuse can be found as a lesser offense of aggravated criminal sexual assault, even where the indictment omits language describing defendant's touching or fondling of the victim for purposes of sexual gratification or arousal. The focus is whether said language is implicitly contained in the charging instrument, and whether the indictment as a whole sets forth the main outline or broad foundation of aggravated criminal sexual abuse.

The indictment here alleges contact between defendant's finger, numerous cologne bottles, and D.'s vagina. Such language is sufficient to establish defendant's touching of D.'s body. The indictment further alleges that defendant used the threat of force to initiate said contact with D.'s vagina. The "threat of force" language and the area of D.'s body touched by defendant implicitly connote that defendant touched D.'s vagina, not by mistake, inadvertence, or for medical reasons, but instead for the purpose of his sexual gratification or arousal. The indictment also explicitly states that defendant was over 17 years of age and that D. was under 13 years of age. Thus, the indictment contains the main outline or broad foundation of aggravated criminal sexual abuse, specifically, that defendant was over 17 years of age and engaged in sexual conduct with D., who was under 13 years of age. Accordingly, under the charging instrument approach, the trial court correctly determined that in this case aggravated criminal sexual abuse was a lesser included offense of aggravated criminal sexual assault.

■ Next, we examine the evidence at trial to determine whether the trier of fact could rationally find defendant guilty of the lesser included offense and acquit him of the greater offense. See *Novak*, 163 Ill. 2d at 108.

We begin by examining whether the trial court could rationally acquit defendant of the greater offense, aggravated criminal sexual assault, which requires proof of sexual penetration, defined as "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person." 720 ILCS 5/12—12(f) (West 1996). At trial, D.'s mother and grandmother testified that D. told them that defendant had shoved cologne bottles up her vagina. However, no medical evidence was presented to support said charges, and defendant took the stand and denied D.'s accusations. Further, D. initially testified that she "forgot" what had happened with the bottles. The trial court could rationally determine from said evidence that the State did not prove defendant committed an act of sexual penetration and, thus, that he was not guilty of aggravated criminal sexual assault.

Next, we examine whether the trier of fact could rationally find defendant guilty of aggravated criminal sexual abuse, that is, that he was 17 years of age or older and committed an act of sexual conduct with a victim under 13 years of age. See 720 ILCS 5/12—16(c)(1) (West 1996). Sexual conduct is defined as "any intentional or knowing touching or fondling by *** the accused, either directly or through clothing, of the sex organs, anus or breast of the victim *** or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal." 720 ILCS 5/12—12(e) (West 1996).

At trial, the evidence established that defendant was over 17 years of age and that D. was under 13 years of age. Moreover, D.'s mother, Julie, testified that D. told her that defendant had touched her neck, chest, stomach, buttocks, and vagina, and that defendant had threatened to shoot D. if she told her mommy about how he touched her. D.'s grandmother also testified that D. pointed to her vagina when questioned about the "exercises" her father did with her. The trial court could rationally find from said testimony that defendant touched D.'s sex organs and other parts of her body for the purpose of his sexual gratification or arousal. Accordingly, we affirm defendant's conviction for aggravated criminal sexual abuse.

■ Next, defendant argues the trial court erred in determining that D. was competent to testify. In determining the competency of a witness to testify, the trial court considers four criteria: (1) the ability of the witness to receive correct impressions from her senses; (2) the ability to recollect these impressions; (3) the ability to understand questions and express answers; and (4) the ability to appreciate the moral duty to tell the truth. *People v. Puhl*, 211 Ill. App. 3d 457, 466 (1991). The trial court's determination will not be disturbed unless the court abused its discretion or manifestly misapprehended some legal principle. *Puhl*, 211 Ill. App. 3d at 466.

■ At the competency hearing, D. spelled her full name and told the court her age, her birthday, her street address, and the names of the people with whom she lives. D. also related her sister's name and age, her dog's name, the grade she was in at school, and the name of her school. When the assistant State's Attorney asked her the difference between a truth and a lie, D. responded that "the truth is you tell it like it is. A lie is you say something that isn't true." D. also stated that a lie is "a bad thing," and that a lie "get[s] [her] in trouble" and causes mommy to "ground" her.

The trial court determined that D. was competent to testify based upon "her ability to know who she was, where she was, where she goes to school, what grade she was in, her ability to understand all of the questions that really were asked of her." We find no abuse of discretion.

Defendant argues, though, that D.'s testimony at trial indicates that she was incompetent to testify. In particular, defendant points to D.'s initial inability to explain why she was in court or to identify the subject about which she was to testify. Defendant also argues that D. "did not testify that her father [had] sexually molested her until the prosecutor overtly suggested to [D.], during direct examination, that she had been molested by her father."

However, a child need not give perfect answers to questions asked

during a competency hearing or at trial to be deemed a competent witness. *People v. Mitchell*, 215 Ill. App. 3d 849, 857 (1991). Once the court determines that the minor is competent to testify, any confusion or contradiction in her later testimony only goes to credibility as a witness, not her competency to testify. *Mitchell*, 215 Ill. App. 3d at 857. Thus, contrary to defendant's argument, the complained-of trial testimony goes to D.'s credibility, not her competency. Further, an examination of D.'s trial testimony indicates that once she got over her initial reluctance to testify, she answered the questions posed to her and gave testimony consistent with that of her mother and grandmother. Thus, D.'s trial testimony ultimately corroborated the trial court's determination that she was competent to testify. We find no abuse of discretion.

■ Finally, defendant contends, and the State agrees, that the mittimus must be corrected to reflect the offense of which defendant was convicted. The trial court convicted defendant of aggravated criminal sexual abuse. However, the mittimus reflects that defendant was convicted of aggravated criminal sexual assault. Pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), we correct the mittimus so that it reflects defendant's conviction for aggravated criminal sexual abuse.

For the foregoing reasons, we affirm defendant's conviction for aggravated criminal sexual abuse and correct the mittimus.

Affirmed and mittimus corrected.

BUCKLEY, P.J., and O'MARA FROSSARD, J., concur.