# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 04-2115

LARRY W. MYARTT,

Petitioner-Appellant,

v.

MATTHEW J. FRANK, Secretary,

Respondent-Appellee.

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 896—**William C. Griesbach**, *Judge.*

————————

ARGUED DECEMBER 7, 2004—DECIDED JANUARY 21, 2005

————————

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* This habeas corpus appeal arises from Larry Myartt's conviction in May 2000 for armed robbery of a dry cleaning store in Milwaukee, Wisconsin. Myartt claims that he was denied his Sixth Amendment right to effective assistance of counsel on direct appeal when his attorney failed to competently argue that the trial court erred in denying his motion to suppress evidence seized in the course of an investigatory stop. The district court rejected Myartt's argument and denied his petition. We affirm.

## I.  Background

These are the facts that were presented at Myartt's two-day jury trial in May 2000: At approximately 2:50 p.m. on March 12, 1998, a man approached the counter at One Hour Valet Cleaners on Wells Street in Milwaukee and asked co-owners Mary Ann and Geraldine Bussey for change. When Geraldine opened the cash register, the man demanded that she relinquish the money in the register. Because the man appeared to have a silver gun in his pocket, Geraldine gave him the money, along with a security badge. Mary Ann followed the man after he left the store, but eventually lost sight of him.

Geraldine then went to nearby Mount Sinai Hospital to look for the man. At Mount Sinai, she made eye contact with a man walking out of an emergency room bathroom, and thought it was the man who had just robbed her. The man, however, was wearing a black-and-red leather coat, which was different than the one the robber had worn. Geraldine followed the man out of Mount Sinai, but stopped following him at some point, and returned to the dry cleaning store.

The police had arrived by the time Geraldine returned to the store. After Geraldine related her story to the police, an officer went to Mount Sinai to follow up. In a garbage can in the emergency room bathroom, the officer found a red nylon jacket with black-and-white stripes, a black knit cap, and a pair of green corduroy pants. The officer then announced over the police radio the description of the suspect he had received from the Busseys: black male, forties, six foot, 170 pounds, thin build, black knit cap, red nylon winter jacket with black and white trim, grayish beard, possibly intoxicated, armed with a silver handgun.

At 3:15 p.m., about five blocks from the dry cleaning store, Officer Ross Reinke and his partner observed a man—petitioner Larry Myartt—that matched the description. The

officers followed Myartt very slowly in their squad car, and Myartt looked back at the police a few times. Myartt did not run or pick up his pace when he saw the squad car. The officers stopped Myartt, patted him down, and found a toy cap pistol in his rear waistband. The officers then conducted a full custodial search and discovered a large amount of currency, coins, and the security badge from the dry cleaning store in Myartt's front pocket. Officer Reineke felt that Myartt may have been intoxicated because he was slurring his speech and would not stand still. At the time the officers stopped him, Myartt was wearing a leather base-ball hat, a leather Chicago Bulls jacket, and tinted sunglasses. Myartt was arrested and charged with armed robbery.

Prior to trial, Myartt filed a motion to suppress the evidence obtained during the investigative stop based on the theory that the stop violated his Fourth Amendment rights. At a hearing, the trial judge carefully compared the police dispatch information about the suspect with Myartt's appearance when arrested and concluded that the officers had a reasonable basis to stop Myartt under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed. 2d 889 (1968) and its progeny. The judge noted that Myartt matched the race, age, and height of the suspect, and that he was at least a "partial fit" on the weight, hat, and jacket descriptions. Those factors, coupled with Myartt's presence five blocks away from the store about twenty-five minutes after the robbery, led the judge to conclude that the stop did not offend the Fourth Amendment. A jury subsequently convicted Myartt of armed robbery.

Carl Chesshir represented Myartt on direct appeal. Chesshir filed an eighteen-page brief on his behalf, with seven pages devoted to attacking the trial judge's ruling on the motion to suppress. The Wisconsin Court of Appeals rejected the Fourth Amendment challenge, concluding that the officers had reasonable suspicion that Myartt had robbed the dry cleaning store. The Wisconsin Supreme Court denied a petition for review.

Myartt filed a pro se habeas petition in the Wisconsin Court of Appeals. Although Myartt styled the claim as one of ineffective assistance of counsel in his brief, he only argued the case under the Fourth Amendment and did not discuss relevant Sixth Amendment principles. The Wisconsin Court of Appeals summarily denied the petition, and the Wisconsin Supreme Court denied review. Myartt then filed a habeas petition pursuant to 28 U.S.C. § 2254. In the district court, Myartt claimed that he was denied his Sixth Amendment right to effective assistance of counsel on direct appeal because Chesshir failed to competently argue that the trial court erred when it: (1) denied his motion to suppress and (2) failed to declare a mistrial when one of the jurors did not agree with the verdict during polling. The district court, applying a de novo standard of review, concluded that Chesshir adequately challenged the denial of the motion to suppress on appeal, and that Myartt had procedurally defaulted on his argument about the juror disagreement. The district court granted a certificate of appealability with regard to Myartt's challenge of Chesshir's handling of the denial of the motion to suppress.

## II. Discussion

### A. Standard of Review

Ordinarily, in a case where the habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, the provisions of the AEDPA would govern our review, and we would consider whether the Wisconsin Court of Appeals' decision resulted from an "unreasonable application" of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984) or an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See, e.g., Roche v. Davis*, 291 F.3d 473, 481 (7th Cir. 2002). However, the AEDPA standards apply only to

claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). In the instant case, the Wisconsin Court of Appeals did not address Myartt's ineffective assistance claim, which is unsurprising because Myartt's pro se filing failed to develop the claim or discuss relevant Sixth Amendment principles. In these circumstances, it is impossible to determine whether the state court's decision involved an unreasonable application of *Strickland*. We agree with the district court that Myartt's ineffective assistance of counsel claim was not adjudicated on the merits in any meaningful sense; consequently, we apply the pre-AEDPA standard of review, which requires us to "dispose of the matter as law and justice require." *Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000).

## B. Ineffective Assistance of Counsel

The sole issue is whether Chesshir's arguments on direct appeal regarding the trial court's denial of Myartt's motion to suppress were so inadequate that Myartt's Sixth Amendment right to effective assistance of counsel was violated. To establish his ineffective assistance of counsel claim, Myartt bears the heavy burden of showing that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687-88. A failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001).

Our review of the state appellate brief that Chesshir filed on Myartt's behalf reveals that Chesshir made well-organized, cogent arguments on the *Terry* stop issue that easily meet prevailing professional norms of appellate representation. As acknowledged by Myartt, Chesshir correctly identified the issue and accurately described the law governing investigative stops by citing to *Terry* and relevant Wiscon-

sin Supreme Court precedent. Chesshir's brief also displays a strong command of the case's factual background and an appropriate emphasis on the portions of the description from the police dispatch that did not exactly fit the description of Myartt at the time he was arrested. After reciting the relevant law and facts, Chesshir made credible legal arguments that fall within the wide range of competent professional assistance.

Myartt argues that Chesshir's representation was deficient in that he did not adequately convey the striking discrepancies between the description of the robbery suspect and Myartt's appearance on the day he was arrested. This argument is without merit for two reasons. First, Chesshir actually did highlight the relevant discrepancies between the victims' description of the police suspect and Myartt's appearance when he was arrested. Specifically, Chesshir noted that Myartt was wearing a leather Chicago Bulls jacket and a black leather baseball hat, not a red nylon jacket and a black knit cap. Chesshir also pointed out that the police did not see a silver gun on Myartt as they approached him and that the arresting officers did not mention that Myartt had a grayish beard. Second, Myartt's criticisms of Chesshir's brief are precisely the type of second-guessing that *Strickland* prohibits. On this point, the following passage from *Strickland* warrants repeating:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland*, 466 U.S. at 689. Although Chesshir's attack on the trial court's denial of Myartt's motion to suppress was ultimately unavailing, we think that Chesshir did a fine job

in light of the facts and law that governed the issue, and we decline Myartt's invitation to second-guess his performance. Because Myartt has failed to identify any deficiency in Chesshir's appellate advocacy, his claim fails to clear the first hurdle of the *Strickland* test, and we have no occasion to address the prejudice prong.

## III. Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*