# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1009

DAVID E. WALKER,

*Petitioner-Appellant,*

*v.*

JON E. LITSCHER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 605—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED JUNE 2, 2005—DECIDED AUGUST 30, 2005

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* This habeas corpus appeal arises from David Walker's February 1998 conviction for kidnapping and first-degree sexual assault while armed. Walker claims that his Sixth Amendment right to confront the witnesses against him was violated by the exclusion of evidence reflecting the complainant's motive to falsely accuse him of sexual assault. He also advances an ineffective assistance of counsel claim. The Wisconsin Court of Appeals, seconded by the district court, rejected his arguments and denied his petition. We affirm.

## I.  Background

### A.  Trial and Conviction

Lorinda S., the complaining witness, testified at Walker's trial that she was at home alone with her four children on September 26, 1997, when the defendant unexpectedly arrived at the house. Lorinda knew Walker because he dated her stepsister. Upon entering the house, Walker grabbed Lorinda by the wrists. Lorinda told him to "stop playing," and he said, "Bitch, I'm not playing." He grabbed her by the neck, bit her on the cheek, and hit her. He also grabbed a hammer that was sitting on the table and threatened to hit her with it as he said, "You know what I want." Lorinda told him to stop, but he forced her into the bedroom and ordered her to perform oral sex on him. When she refused, he hit her, then forcibly pulled up her dress. He pulled the crotch of her underwear aside, but was not able to pull them off because she held on to them. Lorinda testified that he rubbed his penis on her vagina and "put his stuff on me."

Lorinda testified that, during the assault, she told her oldest child, eight-year-old Shontaya B., to call 911, and Shontaya did. Shontaya took the stand at Walker's trial and confirmed her mother's story. Shontaya testified that she saw Walker hit, push, and grab her mother while her mother was saying "stop" and telling him to leave. She saw her mother crying and she saw Walker pick up a hammer and try to hit her mother with it. After Walker pushed her mother into the bedroom, Shontaya went upstairs to call 911. The state played a tape of Shontaya's 911 call for the jury:

> Dispatcher:  Milwaukee Emergency. May I help you?
>
> Shontaya:  Hello, there's a man up [*sic*] my house. My mother's crying and I don't know what to do. She told me to call 911.

Dispatcher: Your mother's crying?

Shontaya: Yes, and there's a man over at my house, and I don't know what he's doing to her.

Dispatcher: Is that her boyfriend?

Shontaya: No, it's a man that, it's a man that I've seen, you know . . .

Dispatcher: And what's he doing? Is he arguing?

Shontaya: No, but I'm hearing a lot of bumping and . . .

Dispatcher: You're hearing what?

Shontaya: A lot of bumping.

Dispatcher: Do you think he's hitting your mother?

Shontaya: Yes.

Dispatcher: Where's your mother now, inside or outside?

Shontaya: She's downstairs.

Dispatcher: What's your address?

Shontaya: Um, I don't know, but I'm . . .

Dispatcher: Okay. I show you're calling from 1830 North 31st.

Shontaya: Okay.

Dispatcher: And you say your mother's in the lower

[*sic*] with the man?

Shontaya:     Um-hum, and you know he's telling her to come in the room.

Dispatcher:   Okay. And what's your name?

Shontaya:     Shontaya.

Dispatcher:   Shontaya?

Shontaya:     Um-hum. Shontaya.

Dispatcher:   Okay. And this is downstairs, okay?

Shontaya:     Okay.

Dispatcher:   We'll get someone out. Thank you.

Shontaya:     You're welcome.

Tr. 137-38.

After Walker left, Lorinda called 911 and told the dispatcher that Walker had tried to rape her, and that he bit her and tried to hit her with a hammer. She also called her fiancé, Clifton Keeler, who arrived at the house before the police did.

Walker took the stand in his own defense and testified that Lorinda invited him to her house and that they had consensual sex. Walker testified that the mark on Lorinda's cheek was a "hickey" that he gave her after their sexual encounter.

The parties stipulated to the following evidence, which was presented to the jury: the state crime laboratory found a small amount of semen on the cervical and vaginal swabs and the "Woods light" swab, taken from Lorinda at the hospital in the late afternoon of September 26, 1997, but there was an insufficient amount of semen for further serological analysis. The nurse from the hospital testified that the "Woods light" swab was taken from Lorinda's right inner thigh and groin. The crime lab report

also contained a finding that no semen was identified on the underwear or dress worn by Lorinda, but this was not presented to the jury by stipulation or otherwise.

Based on the foregoing evidence, the jury convicted Walker of kidnapping and first-degree sexual assault while armed, and acquitted him of an intimidation of a victim charge. The presiding circuit judge sentenced Walker to 70 years in prison.

## B. Post-Conviction Appeals

Walker subsequently filed for post-conviction relief with the Wisconsin circuit court, arguing, *inter alia*, that his Confrontation Clause rights were violated by the exclusion of evidence that Lorinda had a motive to falsely accuse him, and that he was denied his right to effective assistance of counsel when his attorney failed to introduce the crime lab report finding that no semen was found on Lorinda's underwear or dress. The Confrontation Clause issue centered on the trial court's exclusion of evidence that Lorinda's fiancé, Clifton Keeler, had previously assaulted her on at least four occasions. All four of those incidents were memorialized in police reports. The report of the most recent incident, which occurred on October 23, 1996, approximately eleven months before Walker's sexual assault, noted that Keeler was jealous because he thought that Lorinda was involved with another man. Walker argued that the evidence was relevant for two purposes: truthfulness and motive. Regarding truthfulness, Walker asserted that this was evidence that Lorinda was lying when she checked the "no" box in response to the question "Hit or threatened in the past year?" on a hospital report related to the incident with Walker. As to motive, Walker maintained that these prior incidents gave Lorinda a possible motive to falsely accuse him of rape and falsely testify that she did not consent to their encounter. Walker's

theory was that Lorinda manufactured the sexual assault story because she feared that Keeler would find out that they had sex and beat her. The trial court excluded the evidence. Citing Wisconsin's analog of Rule 608(b) of the Federal Rules of Evidence, the court explained that truthfulness cannot be attacked by specific instances of conduct. In addition, the court concluded that the evidence was not admissible evidence of motive because it was too speculative and therefore not relevant. The court cited the following considerations in support of its conclusion that the evidence was irrelevant: there was no evidence that the prior beatings by Keeler occurred because Lorinda was having consensual sex with someone; there was no evidence that she had ever manufactured a sexual assault to avoid a beating by Keeler; there was a physical assault component connected to the incident with Walker; and Shontaya provided eyewitness testimony that corroborated Lorinda's account. The court also ruled that any probative value of the evidence was outweighed by the prejudicial effect of the evidence. The post-conviction circuit court summarily affirmed the trial judge's ruling on the Confrontation Clause issue. On the ineffective assistance issue, the court held that Walker was not prejudiced by his attorney's failure to introduce the crime lab results.

On July 21, 2000, the Wisconsin Court of Appeals affirmed the lower court's decision. With regard to the Confrontation Clause issue, the court explained:

> The trial court reasoned that the relevance of the October 23, 1996 incident to Lorinda's motive to fabricate the nonconsensual nature of sex with Walker was minimal. The court noted the evidence that Lorinda called Keeler in tears and told him that Walker had assaulted her, she had her daughter call 911, her daughter witnessed Walker's physically abusive behavior, and Lorinda had a bite mark on her cheek from Walker. Given this evidence, the trial court could

reasonably consider Walker's theory tying the October 23, 1996 incident to a motive to lie about Walker to be too speculative. The court also expressed a concern about the effect of stereotype, which we understand to mean that the trial court was concerned about the effect on the jury of evidence suggesting that Lorinda had previously had consensual sex with another man besides her fiancé. It is likely that if Walker introduced evidence of the October 23, 1996 incident, whether Lorinda had been involved with another man would become a focus of the trial. That would be irrelevant to the charges against Walker, but distracting and unfairly prejudicial to the State's case. We conclude that the court could reasonably decide that there was a minimal logical connection between the October 23, 1996 incident with Keeler and Lorinda's motive to lie about Walker, and that any probative value the October 23, 1996 incident might have was substantially outweighed by the danger of unfair prejudice.

App. 116. The court also rejected the ineffective assistance of counsel claim, reasoning that the lack of semen on Lorinda's dress and underwear did not necessarily strengthen Walker's case or undercut Lorinda's testimony.

On June 15, 2001, Walker filed a petition for a writ of habeas corpus in the Eastern District of Wisconsin. The court denied the petition on September 3, 2003. Walker's appointed counsel then filed a motion for relief from judgment under Rule 59(e), asserting manifest error of law. On July 28, 2004, the district court denied the motion. The court held that Walker's case was distinguishable from controlling Supreme Court precedent on the Confrontation Clause issue and that the asserted error was harmless in any event. The court also concluded that the Wisconsin Court of Appeals' application of the prejudice prong of the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) was

neither contrary to or an unreasonable application of clearly established federal law. The district court then granted a certificate of appealability on both the Confrontation Clause issue and the ineffective assistance of counsel claim.

## II.  Discussion

### A.  Standard of Review

We review the district court's decision to deny Walker's habeas petition *de novo*. *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Because Walker's habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, the provisions of the AEDPA govern our review. *Myarrt v. Frank*, 395 F.3d 782, 784-85 (7th Cir. 2005). Under the AEDPA, as relevant to this case, a writ cannot be granted unless the state court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). "[C]learly established Federal law" refers to the holdings of the Supreme Court's cases "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "To run afoul of § 2254(d)(1)'s contrary-to standard, the state court must have either (i) adopted a rule that contradicts the governing law of the U.S. Supreme Court or (ii) on a set of facts materially indistinguishable from those at issue in the applicable Supreme Court precedent, reached a different result." *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003) (citing *Williams*, 529 U.S. at 405, and *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Even if the state court erroneously applied federal law,

we may only grant the writ if the decision was objectively unreasonable. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004).

## B. Confrontation Clause

Walker's first argument is that the Wisconsin Court of Appeals' decision on his Confrontation Clause challenge was "contrary to" clearly established federal law in that the court confronted facts materially indistinguishable from the Supreme Court's decision in *Olden v. Kentucky*, 488 U.S. 227 (1988) (per curiam), and nevertheless arrived at a different result. We disagree. Though the facts in *Olden* are superficially similar to the instant facts in ways that the facts in many sexual assault cases would be, they are not indistinguishable. In *Olden*, two men were indicted for kidnapping, rape, and forcible sodomy. *Id*. at 228. The *Olden* defendants asserted a defense of consent. *Id*. at 229. The defendants' "theory of the case was that [the complainant] concocted the rape story to protect her relationship with [her boyfriend]." *Id*. at 230. The complainant admitted that she had been out drinking at a bar, "became somewhat intoxicated," and voluntarily left with one of the defendants. *Id*. at 228. According to the complainant, the defendants then raped her and dropped her off at her boyfriend's house. *Id*. Her boyfriend, the half-brother of one of the assailants, heard a noise outside of his home, went out to investigate, and saw his girlfriend get out of the assailant's car. *Id*. at 228-29. The complainant immediately told her boyfriend that the men raped her. *Id*. at 229. The jury acquitted one defendant on all charges and acquitted the second defendant of kidnapping and rape, but convicted him of forcible sodomy. *Id*. at 230.

The defendant convicted of sodomy appealed his conviction on the basis of the Confrontation Clause. *Id*. At trial,

the co-defendants wanted to demonstrate that the complainant had motive to lie by introducing evidence that the complainant was living with her boyfriend at the time of trial. *Id*. This was the same boyfriend who had seen her get out of his half-brother's friend's car in an intoxicated state on the night of the incident. *Id*. The trial judge excluded all evidence of the complainant's living situation and did not allow defense counsel to cross-examine the complainant on the issue even after she claimed on direct examination that she was living with her mother. *Id*. at 230. The Supreme Court in *Olden* held that the court's refusal to permit cross-examination on the complainant's cohabitation with her boyfriend violated the defendant's Sixth Amendment right to confront the witnesses against him. *Id*. at 232-33. The Court emphasized that "the exposure to a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id*. at 231 (internal quotations and citations omitted). The Court acknowledged that trial courts have discretion to impose reasonable limits on cross-examination, but concluded that "the limitation here was beyond reason" because the evidence about the complainant's relationship had such strong potential to cast doubt on her testimony. *Id*. at 232.

The instant case is distinguishable. Given the *Olden* complainant's admission that she had been out drinking with the defendants on the night of the incident, her voluntary departure from the bar with the men, her admission that the men dropped her off at her boyfriend's house after the incident (a gesture that seems unusual in light of her allegations), her boyfriend's testimony that he saw her get out of the defendant's car on the night of the incident and his possible suspicion of infidelity, and her continued cohabitation with the boyfriend at the time of trial, the defendants' theory of the case was plausible and had a factual basis in the evidence. The jury apparently

believed so, considering that it acquitted one defendant of kidnapping, rape, and sodomy and acquitted the other of kidnapping and sodomy even in the absence of evidence of the complainant's cohabitation with her boyfriend at the time of trial. Walker's defense, on the other hand, was somewhere between absurd and impossible. According to Walker, Lorinda called him over to have sex during the middle of the day while she was watching her four children, all under the age of nine. When Walker appeared, Lorinda shepherded the children into a room and had sex with him. But she did not want her boyfriend to find out about the encounter. To that end, instead of simply never telling her boyfriend about the tryst, she told her daughter to call 911 while she was in the middle of having sex with Walker. Tr. of 911 Call ("[My mother] told me to call 911."). Lorinda also put on a good show for her children by crying, and Walker got into the act of setting himself up for a false sexual assault charge by hitting Lorinda before they had sex. *Id*. The foregoing defense, Walker asserts, hinged on his being able to explore the fact that Lorinda was a victim of domestic violence, at least as recently as eleven months before Walker sexually assaulted her. We fail to see the connection between the stale report of domestic violence at the hands of her boyfriend and the far-fetched, pre-planned set-up of Walker on sexual assault charges. In contrast to *Olden* where the limitation was "beyond reason" because evidence about the complainant's relationship had such strong potential to cast doubt on her testimony, the restriction placed on Walker's cross-examination of Lorinda was well within the trial judge's wide discretion to impose reasonable limits on cross-examination because it did not have potential to cast doubt on Lorinda's testimony. We accordingly conclude that the Wisconsin Court of Appeals' decision was not contrary to *Olden*.

Walker also asserts that the reviewing court's decision was an "unreasonable application" of the principles an-

nounced in *Olden*, *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Davis v. Alaska*, 415 U.S. 308 (1974). He faces an uphill battle on this argument under the AEDPA because it is not enough to show that a state court erroneously applied clearly established federal law; the petitioner must also show that the court applied the law "in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). For the reasons stated above, we see no problem with the Wisconsin Court of Appeals' application of the principles announced in *Olden* to this case. The court's ruling was also consistent with *Van Arsdall*. In *Van Arsdall*, the Court held that Confrontation Clause errors are subject to the *Chapman v. California*, 386 U.S. 18 (1967), harmless error analysis. Because the Wisconsin Court of Appeals did not find any Confrontation Clause error, it had no occasion to apply the harmless error analysis. Moreover, the *Van Arsdall* Court emphasized that trial courts have wide latitude "to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is . . . only marginally relevant," *id*. at 679, which accurately describes the excluded evidence in this case. At any rate, even if the reviewing court's application of *Olden* or *Van Arsdall* was erroneous, it was not objectively unreasonable, which dooms his argument with regard to those cases.

Nor was the state court's application of the principles discussed in *Davis* objectively unreasonable. *Davis* involved the robbery of a large safe from a bar in Anchorage, Alaska. *Davis*, 415 U.S. at 309. The only eyewitness was a sixteen-year-old who claimed to have seen the defendants near his house with a crowbar (the safe was recovered near the eyewitness' house). *Id*. at 310. It turned out that the eyewitness was on probation for burglary himself, a fact which defense counsel wanted to explore on cross-examination. *Id*. at 310-11. The state court precluded impeachment on the issue because it conflicted with Alaska's interest in

preserving the confidentiality of juvenile adjudications of delinquency. *Id*. at 311. The Supreme Court reversed on the basis of the Confrontation Clause. *Id*. at 320. The Court noted that a few of the eyewitness' responses to questions on cross-examination were almost certainly false in light of his juvenile record but that the trial court's ruling prevented defense counsel from impeaching him on the issue. *Id*. at 314. The Court observed that "[i]t would be difficult to conceive of a situation more clearly illustrating the need for cross-examination," and remanded the case for further proceedings. *Id*. As may already be evident, *Davis* is of no assistance to Walker due to the unique factual scenario in that case: a crucial prosecution witness, who may have wondered if he was also a suspect for the crime, was telling lies at trial that were protected by the court's evidentiary ruling. The instant case simply did not involve those circumstances. Moreover, the state court of appeals' ruling in the this case was not an objectively unreasonable application of the general principles about cross-examination and bias discussed in *Davis*.

As the foregoing analysis illustrates, rulings on Confrontation Clause issues are very fact-specific and involve case-by-case determinations. At the same time, and perhaps for that very reason, the Confrontation Clause standards are very general, making it difficult to call a state court ruling in this area "objectively unreasonable." On this point, the Supreme Court's discussion in *Yarborough* warrants repeating:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial

element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determination.

*Id*. at 664.

In sum, the Wisconsin Court of Appeals' ruling on the Confrontation Clause issue was not "contrary to" *Olden* because Olden involved the exclusion of bias evidence with very strong potential to cast doubt on the complainant's testimony, and the evidence excluded in this case was remote, without connection to the incident at issue, and devoid of potential to undermine Lorinda's testimony and the prosecution case. Furthermore, the ruling was not an "unreasonable application" of the broad cross-examination principles discussed in *Olden*, *Van Arsdall*, and *Davis*. We accordingly reject Walker's argument that his writ should be granted due to the state court's decision on his Confrontation Clause challenge.

## C. Ineffective Assistance of Counsel

Walker also asserts that the Wisconsin Court of Appeals' decision on his ineffective assistance of counsel was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). To establish his ineffective assistance of counsel claim, Walker bears the heavy burden of showing that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687-88. A failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001).

Walker's challenge centers on the state crime lab findings. The parties stipulated to the fact that a small amount

of semen was found on the cervical, vaginal, and inner and groin swabs, but that the amount was insufficient for further serological analysis. Though the crime lab report also contained a finding that no semen was identified on the underwear or dress worn by Lorinda, Walker's attorney failed to present the finding to the jury. Walker views his attorney's failure to present that portion of the crime lab report as ineffective assistance of counsel and contends that the Wisconsin Court of Appeals unreasonably applied *Strickland* in rejecting his claim. We disagree.

The Wisconsin Court of Appeals correctly identified *Strickland* as the controlling Supreme Court case on the issue and concluded that Walker had not met the prejudice prong of the *Strickland* test. The court noted that the only testimony as to whether Walker ejaculated was Lorinda's ambiguous testimony that Walker "put his stuff on me." Furthermore, the court reasoned that the lack of semen on Lorinda's dress and underwear did not necessarily strengthen Walker's case or undercut Lorinda's testimony. We agree with the state court's analysis and conclusion. Walker did not testify that he ejaculated. Lorinda's testimony about Walker's "stuff" could reasonably be interpreted as a reference to ejaculation or his penis. Even if she was referring to ejaculation, she did not testify that he ejaculated on her dress and underwear; she testified that he "put his stuff *on me*," which may be why a small amount of semen was found on the cervical, vaginal, and inner thigh and groin swabs. Regardless of whether Walker ejaculated and if he did, where the semen landed, it was reasonable for the reviewing court to conclude that Walker's attorney's failure to introduce the lack of semen finding did not undermine confidence in the outcome of the proceedings, particularly given the weight of the evidence against Walker.

## III.  Conclusion

For the above-stated reasons, we AFFIRM the district court's denial of Walker's petition for a writ of habeas corpus.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-30-05